# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

MICHAEL TAYLOR, on behalf )
of himself and others similarly )
situated, )
 )
  Plaintiff, )
 ) C.A. No. 1:11-cv-03426-AT-GGB
   v. )
 )
SCREENING REPORTS, INC., )
 )
  Defendant. )
 )

## DEFENDANT'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, Screening Reports, Inc., pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1(B)(1) submits this Statement of Material Facts in Support of its Motion for Summary Judgment:

### *Background on Screening Reports, Inc.*

1. Screening Reports, Inc. ("SRI") is an Illinois corporation that employees approximately 100 persons, six of whom reside in Georgia, and is engaged in the business of conducting criminal background checks on apartment applicants. See Ex. A, deposition transcript of Fortner, p. 8, l. 21 to p. 9, l. 4; *See also* Ex. B Affidavit of Tim Fortner at ¶ 2 & 3.

1

2.     Landlords engage SRI's services to avoid renting to potentially dangerous tenants and provide a crime-free environments for their tenants.  *See,* Complaint at ¶ 10 (Doc. 1); *See also* Ex. A, p. 8, l. 21 to p. 9, l. 4; *See also* Ex. B, at ¶ 3;  *See also* Ex. C, WBTV.com article regarding importance of adequate criminal background check on tenant: "Jury Issues Verdict in Wrongful Death Lawsuit," ("Jurors contended that more should have been known about [tenant] before he moved into the [apartments], where he strangled [other tenant] to death in her unit with an electrical cord,") *available at* http://www.wbtv.com/story/11958156/jury-issues-verdict-in-wrongful-death-lawsuit?clienttype=printable.

3.   SRI conducts business from Philadelphia to Miami to Minneapolis, does not do business in every part of the country and is not a consumer reporting agency that assembles, evaluates or maintains files on consumers on a nationwide basis. *See* Ex. A, p. 43, l. 18-23; p. 219, l. 14 to p. 220, l. 2; *See also* Ex. D, deposition transcript of Carter Huhta, SRI's Chief Financial Officer and Chief Operating Officer at p. 68, l. 22, p. 70, l. 12, p. 71, l. 17-20;  *See also* Ex. B at ¶ 5.  SRI does not compile and maintain files on consumers on a nationwide basis relating to medical records or payments, residential or tenant history, check writing history, employment history, or insurance claims. *See* Ex. D, p. 71, l. 21 to p. 73, l. 20; *See* Ex. B at ¶ 6.

### *How SRI Conducts Criminal Background Checks*

4.     SRI's apartment complex clients send SRI personal identifying information on each rental applicant upon whom they want criminal background checks conducted. *See* Ex. A, p. 33, l. 18 to p. 34, l. 18.  SRI receives the information that it utilizes in preparing reports for its clients from reputable, legitimate and authoritative sources. *See,* Ex. B at ¶7. SRI has never received notice of systemic problems with any of the procedures it utilizes in preparing criminal background checks on consumers or in preparing reports to its clients regarding the outcome of those background checks. *See,* Ex. B at ¶8.

5.     SRI then conducts identity verification on the applicant, searching their social security number and running a search through the Office of Foreign Asset Control ("OFAC") list maintained by the U.S. Treasury.  *See* Ex. A, p. 37, l. 22 to p. 38, l. 4.  If when searching the social security number of an applicant SRI obtains a middle name or initial for the applicant SRI will add that information to the applicant's file as an "also known as" or "AKA".  *See*, Ex. B at ¶ 9.

6.     SRI next performs a national criminal search on the applicant using databases SRI buys from third-party companies.  *See* Ex. A, p. 38, l. 22 to p.39, l. 9; p. 163, l. 7-15.

7.     SRI then directly verifies those records by directly accessing the criminal court records and also searches the criminal records of the courts for the counties specified by its client or that SRI determines the applicant may have lived

in by directly accessing county courthouse websites. *See* Ex. A, p. 39, l. 10 to p. 40, l. 5; p. 163, l. 7 to p. 164, l. 24.

8.     Since not all court houses allow access to their records through the Internet, SRI sends researchers, known as "Runners", to those courthouses to conduct searches by directly accessing court computer systems.  *See* Ex. A, p. 44, l. 8-14; p. 169, l. 14-20.

9.   It is SRI's policy to achieve the maximum possible accuracy when conducting criminal background checks and in so doing takes steps in addition to those taken by their competitors.  *See* Ex. E, deposition transcript of SRI Researcher and Runner Manika Griffin, p. 81, l. 15-21; *See also* Ex. A, p. 237, l. 4 to p. 238, l. 18.

10.     SRI's competitors do not use Researchers who visit county web sites containing the actual criminal record sources, or Runners to investigate the validity and accuracy of the criminal records they buy from third party companies.  *See* Ex. A, p. 163, l. 7, to p. 164, l. 24. 12.

11.   Instead, SRI's competitors rely on stale data from third party databases that are not regularly updated to account for changes in county records, and who instead of using humans to manually search websites use web crawlers in an attempt to "scrape" data off websites but are often blocked by the constantly

increasing number of county websites which use "CAPTCHA" technology to block non-human access. *See* Ex. A, p. 164, l. 9 to p. 168, l. 2.

12.    Unlike its competitors, SRI's system ensures its reports contain "realtime" verified information obtained directly from counties, and SRI is not a "reseller" of "stale" and unverified criminal records.  *See* Ex. A, p. 168, l. 9 to p. 169, l.12.

13.    As a result SRI's reports are more accurate than those of its competitors.  *See* Ex. A, p. 164, l. 9 to p. 168, l. 2.

### *How SRI Uses Personal Identifiers to Confirm Criminal Records*

14.   In addition to conducting initial identity verification on applicants as explained in paragraph 5 above, SRI's personnel utilize as many personal identifiers as possible to make sure they have made a correct match to the applicant, comparing the identifiers obtained by clients from applicants to those available in the websites and court records SRI searches, and requiring a minimum of at least two matching personal identifiers before reporting a criminal record in an SRI report.  *See* Ex. A, 57, l-24 to p. 58, l.1; p. 59, l. 3 to p. 60, l. 14; p. 81, l. 23 to p.82, l.23; p.172, l. 14 to p. 173,l.4;  *See also* Ex. F, deposition transcript of SRI former Researcher and current Criminal Manager Erin Ward, p. 23, l. 1-14; 68, l. 18 to p. 69, l. 10; p. 71, l. 14-17; *See also* Ex. G, Affidavit of SRI Researcher Joanna Posada at ¶ 4.

15.  In determining if they have  made a correct match to an applicant SRI's Researchers and Runners also consider identifiers such as aliases, address, social security number, date of birth, year of birth, whether the criminal is still incarcerated (indicting they are not the applicant), year of conviction and sentencing period (indicting they are not the applicant if still serving a sentence), the applicant's residence compared to the state of the criminal's arrest, and the date the crime was committed in comparison to the applicant's birth date (indicating they are not the applicant if the applicant was too young to commit the crime). *See* Ex. A, p. 37, l. 22 to p. 38, l. 4; p. 51, l. 7 to p. 52, l. 9; p. 58, l. 9-16; p. 80, l. 9-19; p. 171, l. 17-25; p. 83, l.21 to p. 84, l. 22; p. 85, l. 10-12; p. 175, l. 6 to p. 176, l. 14; p. 177, l. 2-22; *See also* Ex. F, p. 72, l. 6 to p. 73, l. 18; p. 75, l. 2-14; *See also* Ex. G at ¶ 5.

16.  Criminal records, however, often do not contain social security numbers.  *See* Ex. E, p. 24, l. 17-19; p. 25, l. 6-9; p. 44, l. 21-23; p. 45, l. 3-6; p. 48, l. 1-5; p. 69, l. 24 to p. 70, l. 2;  *See also* Ex. F, p. 75, l. 7-14.  Further, many criminal records contain only the year of the criminal's birth as opposed to the criminal's entire birth date.  *See* Ex. E, p. 29, l. 16 to p. 30, l. 1; p. 44, l. 18-20; p. 67, l. 20-24;  *See also* Ex. F, p. 92, l. 23 to p. 93, l. 3. Additionally, in some cases applicants withhold personal identifier information, such as a middle name or social security number, in which case SRI does the best it can with what it has been

provided.  *See,* Ex. A, p.172, l. 14 to p. 173, l. 4.  The fact that an applicant uses a name which differs from an alias associated with that same name in a criminal record does not rule out the possibility that the criminal record belongs to the applicant.  *See* Ex. F, p. 84, l.9 to p. 85, l. 22.

17.  SRI's competitors, who sell "instant" criminal reports, are unable to utilize as many personal identifiers as SRI to ensure correct matches of criminal records to applicants.  *See* Ex. A, p. 177, l. 23 to p. 178, l. 12.  The success of SRI's business depends on the accuracy of its reports, and it is extremely important from a business standpoint that SRI not erroneously report to its clients criminal activity by applicants, which is an important reason why SRI trains its personnel to identify mismatches.  *See* Ex. A, p. 178, l. 15 to p. 180, l. 10.

### *The Fair Housing Law Concerns of SRI's Clients*

18.  SRI's clients do not collect, nor does SRI ask for, information regarding the height, weight, race or sexual orientation of applicants because SRI's clients do not want to categorize their applicants into certain groups due to fair housing and other laws.  *See* Ex. A, p. 241, l. 23 to p. 242, l. 22;  *See also* Ex. H, p. 4-21, U.S. Department of Housing and Urban Development, "HUD Occupancy Handbook," *available  at* http://www.hud.gov/offices/adm/hudclips/handbooks/hsgh/4350.3/43 503c4HSGH.pdf, ("Prohibited Screening Criteria" states owners are prohibited from establishing screening criteria that would "discriminate based on race, color,

religion, sex, national origin, age, familial status, or disability."). Accordingly, SRI does not include photographs or height and weight information from criminal records in its reports on applicants to its clients who do not want information regarding the race of applicants in their files and want to make decisions based on the data in SRI's reports as opposed to personal information. *See* Ex. A, p. 249, l. 4 to p. 252, l. 8. SRI's competitors do not ask for this information and it is not standard practice to do so. *See* Ex. A, p. 252, l. 13 to p. 253, l. 19.

19. When conducting criminal background checks SRI's personnel do not have photographs, or information on race or national origin of applicants because this information is not provided by SRI clients. *See* Ex. E, p. 79, l. 23 to p. 80, l. 10. Photographs would not have much importance for making initial identifications because people's appearances can change completely in a period of months. *See* Ex. F, p. 78, l. 12-21. Further, photographs are not always included in the criminal records made available by governmental agencies. *See* Ex. E, p. 28, l. 21-24; p. 29, l. 13 to p. 30, l. 6; p. 33, l. 1-12; p. 62, l. 7 to p. 63, l. 10; p. 79, l. 15-22; *See also* 5th page of Griffin deposition (Ex. E) Exhibit # 2, attached as Ex. I, which states, *inter alia*, "…this offender's photo is not available."

### *SRI Researcher and Runner Maneka Griffin*

20. SRI hired Manika Griffin in Georgia in September of 2009 as a Researcher and Runner and provided her with approximately one week of hands

on, on-site training on how to conduct criminal background checks. *See* Ex. E, p. 12, l. 24 to p. 13, l. 4; p. 15, l. 3-4; p. 17, l. 14-22; p. 20, l. 1-2; p. 21, l. 6-10; p. 24, l. 13-24; p. 50, l. 4-9; p. 63, l. 7-16; p. 63, l. 6-16; *See also* Ex. I.

21.    Ms. Griffin was trained to obtain as much identifying information as possible, including identifiers that might be missing in an applicant's file, when conducting background searches on an applicant. *See* Ex. E, p. 79, l. 4-14.

22.    Ms. Griffin was trained to err on the side of the applicant by not including in their report criminal records she was not comfortable belonged to them. *See* Ex. E, p. 72, l. 17-21.

23.    Consistent with her training, Ms. Griffin would use as identifiers to confirm that a criminal record belongs to an applicant  name, date or year of birth, social security number, middle name or initial, a.k.a.'s, and how long the person was incarcerated or whether they were still incarcerated, which indicates they can't be the applicant. *See* Ex. E, p. 24, l. 13-20; p. 29, 16-21; p. 66, l. 16- to p. 67, l. 24.

24.    Ms. Griffin's supervisor reviews her performance and she gets feedback from the review once a month.  *See* Ex. E, p. 23, l. 12-19; p. 30, l. 24 to p. 31, l. 6. SRI has a disciplinary policy under which employees who are not accurate and don't do their jobs correctly receive demerits and are written up.  *See* Ex. E, p. 73, l. 8-18; *See also* Ex. G at ¶ 6.  Ms. Griffin has never been written-up under this program or otherwise disciplined and has never received any complaints about her

performance.  *See* Ex. E, p. 31, l. 11-13; p. 73, l. 1-21. In fact, Ms. Griffin has received praise and a $50 gift card as a reward for a job well done and great performance because she was consistent with her work, on time, and completing all her daily tasks.  *See* Ex. E, p. 31, l. 14 to p. 32, l. 13; p. 73, l. 4-7.

25.    Ms. Griffin's supervisor, Erin Ward, considers Ms. Griffin to be very well trained and instructed, honest and "my best of my best", and she has never experienced instances where she has made errors repeatedly.  *See* Ex. E, p. 20, l. 14-17; Ex. F, p. 87, l.15 to p. 88, l. 9.

## *Background on Plaintiff*

26.    On March 31, 2011, approximately 4 ½ months before filing this lawsuit, Plaintiff sued Experian Information Solutions under the FCRA alleging, *inter alia,* that he had "applied for and has been denied various loans and extensions of consumer credit on many different occasions" based on Experian's report which contained erroneous accounts belonging to other people.  *See* Ex. J, deposition transcript of Plaintiff at p. 58, l. 12 to p. 59, l. 23; p. 65, l. 23 to p. 66, l. 22;  *See also* Ex. K, Complaint in *Taylor v. Experian*, 11 cv 01019 at ¶8&10. Plaintiff settled his lawsuit, dismissing it on April 5, 2012. *See* Ex. J., p. 66, l. 14-22; *See also* Ex. L, entry # 17 on Taylor v. Experian Civil Docket.   Those same attorneys represent Plaintiff in this lawsuit.  *See* Ex. J. p. 138, l. 1-20; *See also* Ex. L.

### *Plaintiff's Application With Silverleaf Apartments*

27.  On August 12, 2010 Plaintiff filled out an application for an apartment at  Silverleaf Apartments ("Silverleaf"), which in turn supplied his information to SRI to obtain a criminal background check on Plaintiff.  *See* Ex. J, p. 14, l. 7-10; *See also* Ex. A, p. 34, l. 7 to p. 35, l. 21; *See also* p. MT0040 of Exhibit # 1 of Ward deposition (Ex. F), attached as Ex. M.  Plaintiff did not gave Silverleaf his middle name or initial when he applied and SRI did not receive this information. *See also* Ex. A, p. 34, l. 7-14; p. 35, l. 6-21; *See also* Ex. F, p. 84, l.9 to p. 85, l. 5; *See also* Ex. M.   Later that day SRI sent Silverleaf its report on Plaintiff. *See* Ex. A, p. 29, l. 24 to p. 31, l. 7.  Plaintiff, who lived in a house with his sister at the time did not

### *SRI's Criminal Background Check on Plaintiff*

28.   Ms. Griffin conducted a criminal background search on Plaintiff utilizing his name "Michael Taylor", his full date of birth, his full social security number, and his a.k.a of "Michael A. Taylor".  *See*  Ex. E, p. 41, l. 5 to p. 42, l. 12. Since Fulton County criminal records are not accessible through the internet Ms. Griffin searched those records at the Fulton County Courthouse and found none matching Plaintiff.  *See* Ex. E, p. 36, l. 2-5; p. 42, l. 21-24.

29.  Ms. Griffin also conducted a statewide search of the criminal records of all the other counties in Georgia utilizing the Georgia Department of Corrections

Website, which provides access to those counties' records. *See* Ex. E, p. 35, l. 15 to

p. 37, l. 9; p. 42, l. 25 to p. 43, l. 2.

30.     On that Website Ms. Griffin conducted an offender inquiry to search

for records on Plaintiff utilizing his first and last name.  *See* Ex. E, p. 62, l. 7-25.

This took Ms. Griffin to a results page containing matching names for offenders

with the name "Michael Taylor", including middle names, and  their offences. *See*

Ex. E, p. 62, l. 25 to p. 63, l.2.   Ms. Griffin then drilled down on the matching

name of each offender to check their year of birth,  a.k.a.'s, list of crimes, and to

determine if they were still incarcerated.  *See* Ex. E, p. 63, l. 2-10; p. 64, l. 4-6, 19-

23.  In so doing Ms. Griffin found records for four felonies and a misdemeanor

committed by a "Michael Taylor" with a middle initial of "A" in Ware County,

Georgia.   *See* Ex. E, p. 42, l. 25 to p. 43, l. 2; p. 43, l. 20 to p. 44, l. 15;  *See also*

page MT0002 of Griffin deposition (Ex. E) Exhibit # 3, attached as Ex. N. The

only records of felonies that Ms. Griffin found for a Michael Taylor in Ware

County were those for a Michael A. Taylor who had the same birth year as

Plaintiff's. *See* Ex. E, p. 43, l. 20 to p. 44, l. 17.   Ms. Griffin relied on these

personal identifiers in reporting the Ware County criminal records on Plaintiff's

report.  *See* Ex. E, p. 43, l. 7 to p. 44, l. 6; p. 76, l. 11 to p. 77, l. 4;  *See also* Ex. N;

*See also* 2nd and 3rd pages of Griffin deposition (Ex. E) Exhibit # 4, attached as Ex.

O.   Ms. Griffin  also  determined  the  Michael  A.  Taylor  she  found  was  not

incarcerated at the time of Plaintiff's application with Silverleaf, further verifying she had made a correct match. *See* Ex. E, p. 77, l. 5-19; p. 78, l. 6-10; *See also* Ex. N; *See also* page Ex. O (which shows the last "INCARCERATION END" date of 8/10/2009.)

31.    In total Ms. Griffin used four identifiers (*i.e.,* first and last name, middle initial, year of birth, and incarceration information) to determine the Ware County criminal records were Plaintiff's.  *See* Ex. E, p. 76, l. 11 to p. 77, l. 22.

### *SRI's HUD Required Sex Offender Search on Plaintiff*

32.    As required of its clients by the U.S. Department Housing and Urban Development Authority ("HUD"), SRI conducted a multi-state sex offender search when it prepared its report on Plaintiff. *See* Ex. A, p. 75, l. 15 to p. 76, l. 7; p. 192, l. 10 to p. 193, l. 16; *See also* Ex. H, p. 4-16 to 4-18, p. 4-53 ("HUD requires that owners develop tenant selection plans that contain prohibitions against the admission of applicants who are engaging or have engaged in …criminal activity.").

33.    In conducting the search trained and qualified SRI Researcher Joanna Posada made the "possible" match of Plaintiff to a person listed in the national sex offender registry. *See* Ex. A, p. 50, l. 18-21; *See also* Ex. G at ¶2-6 & 8;  *See also* page MT0031 of Exhibit # 3 of Griffin deposition (Ex. E), attached as Ex. P (showing "Joanna" conducted the search  and entered the statement).  SRI's report

on Plaintiff issued to Silverleaf, states that the match was only "possible".  *See* Ex. E, p. 54, l7-21;  *See also* page TAYLOR – 00003 of Exhibit # 2 of Taylor deposition (Ex. J), attached as Ex. Q.

34.    Ms. Posada conducted this search utilizing the National Sex Offender Website maintained by the federal Department of Justice to track registered sex offenders.  *See* Ex. A, p. 71, l. 9 to p. 72, l. 7;  *See also* Ex. F, p. 6, l. 17 to p. 8, l; *See also* Exhibit # 2 (MT0043 to MT0046) of Ward deposition (Ex. F), attached as Ex. R; *See also* Ex. G at ¶ 7.   This Website utilizes every state's sex offender registry allowing for a nationwide search of sex offenders through a single source. *See* Ex. A, p. 62, l. 19-25; p. 70, l. 19 to p. 72, l. 3; p. 76, l. 4-17; *See also* Ex. R.

35.  The National Sex Offender Website contains only one Michael Taylor with a Georgia location.  *See* Ex. G at ¶ 9 and Exhibit C thereto (listing on page 7 of 8 a Michael Lee Taylor located in Dougherty County).

36.    Ms. Posada next conducted a search for "Michael Taylor" on the Georgia Department of Corrections' website, which she uses because it provides additional identifying information on criminals not available through the National Sex Offender Website including race, known aliases, records of other crimes, sentencing dates, sentence lengths, and incarceration beginning and end dates. *See* Ex. G at ¶7&9. The Georgia Department of Corrections records for this person provide the same birth year of 1965 as Plaintiff's, and that the name "Michael Lee

Taylor" is only an alias for the person.  *See* Ex. G at ¶ 9 and Exhibit D thereto. Further, the Georgia Department of Corrections records show that Michael Taylor had been released from incarceration on August 3, 2010, just before Plaintiff applied for an apartment with Silverleaf on August 12, 2010.  *See* Ex. G at ¶ 10.

37.    By reviewing the criminal records on Michael Taylor in the attached pages from the National Sex Offender Website and the Georgia Department of Corrections Offender Search Ms. Posada found four identifiers indicting that the Michael Taylor found on those websites is in fact the Plaintiff: (1) same first and last names; (2) Georgia location; (3) year of birth; and (4) incarceration release date just prior to his application for an apartment. In addition, the known alias of "Michael Lee Taylor" provided by the Georgia Department of Corrections records indicates that the criminal could have used the name "Michael Taylor" when applying for the apartment. *See* Ex. G at ¶ 11 and Exhibits C & D thereto.

### *SRI's Report to Silverleaf*

38.  On August 12, 2010 SRI sent Silverleaf a report on Plaintiff reporting the Ware County felonies and misdemeanor and the "possible" sex offender match for Plaintiff.  *See* Ex. A, p. 29, l. 24 to p. 31, l. 7;  *See also* pages MT0001 & MT0002 of Exhibit # 1 of Ward deposition (Ex. F), attached as Ex. S.

### *Plaintiff's Own Criminal Background Check*

39.   On August 13, 2010, Plaintiff completed a form, this time using his full name including middle initial, authorizing the Chamblee, Georgia Police Department run a criminal background check on himself.  *See*, Ex. J, p. 102, l. 23 to p. 103, l. 14;  *See also* page TAYLOR 00005 of Plaintiff deposition Exhibit # 2, attached as Exhibit T.   The Department completed the search that day and returned the form to Plaintiff with a stamp stating, *inter alia,* "NO RECORD".  *See*, Ex. J, p. 106, l. 4-11; *See also* Ex. T.

40.    Rather than sending the Chamblee Police Department's form to SRI to correct his report, or to Silverleaf, Plaintiff sent it to his attorneys in this case. *See*, Ex. J, p. 107, l. 3-19.

### *Silverleaf's Adverse Action Notice to Plaintiff*

41.   Silverleaf was obligated to notify Plaintiff after having denied his apartment application based on SRI's report.  *See* §1681m of FCRA; *See also* Ex. U, sample adverse action notice published in the Federal Register on 3/18/03; *See also* Ex. CC, FCRA guidance for landlords published by the Federal Trade Commission.  Silverleaf's adverse action was required to include a statement setting forth the consumer's right "to a free copy of [the consumer's] report from the [CRA] if [the consumer] request[s] it no later than 60 days after [the consumer] receive[s] this notice."  *See* Ex. U.

42.    Silverleaf's adverse action notice, which Plaintiff received, stated "You have a right to obtain a free copy of your consumer report within 60 days from your receipt of this notice." *See* Ex. J, p. 46, l. 3-9;  *See also* page TAYLOR – 00001 of Plaintiff deposition (Ex. J) Exhibit # 2, attached as Exhibit V.

43.   As a convenience to its clients SRI has a link on its website which allows its clients to print an adverse action notices to give to applicants whom they have denied based on SRI's reports.  *See* Ex. A, p. 65, l. 14-21; p. 210, l. 19 to p. 220, l. 9.

44.    On August 18, 2010 Angelica Cortes of Silverleaf asked SRI for assistance in generating an adverse action notice for Plaintiff which Plaintiff had requested for his attorney.  *See* Ex. A, p. 155, l. 15 to p. 156, l. 14; p. 211, l. 10 to p. 212, l. 19;  *See also* Exhibit # 7 of Fortner deposition (Ex. A), attached as Exhibit W. Within 20 minutes of that request SRI employee Cindy Schwartz responded to Ms. Cortes with instructions on how she could print the notice.  *See* Ex. A, p. 156, l. 16-19.  *See also* Ex. W.  At approximately 8:35 am on August 20, 2010 Silverleaf printed the adverse action notice, stating that Plaintiff's application had been denied due to a criminal record match, which Silverleaf gave to Plaintiff. *See* Ex. A, p. 156, l. 20-24; p. 212, l. 19-25; *See also* Exhibit W; *See also* Ex. E, p. 46, l. 3-9;  *See also* Ex. V (produced by Plaintiff in response to SRI's document

production requests and recognized as such by Plaintiff at Ex. J, p.11, l. 24 to p. 12, l. 14).

45.     Plaintiff admits he received Silverleaf's adverse action notice. *See* Ex. J, p. 46, l. 3-9; *See also* Ex. V.  Plaintiff recalls that after being denied an apartment at Silverleaf he was given a document by a lady at Silverleaf bearing SRI's name.  Ex. J, p. 48, l. 3 to p. 51, l. 25; p. 52, l. 12 to p. 53, l. 12. Plaintiff contacted his attorneys in this case after receiving Silverleaf's adverse action notice.  *See,* Ex. J, p. 137, l. 21 to p. 139, l. 18.

46.  In addition to informing Plaintiff of his right to obtain a free copy of his report from SRI within 60 days, Silverleaf's adverse action notice informed Plaintiff of his "RIGHT TO DISPUTE THE ACCURACY OF COMPLETENESS OF ANY INFORMATION IN [his] CONSUMER REPORT."  *See,* Ex. J, p. 46, l. 3-9; *See also* Ex. V.  Silverleaf's adverse action notice further stated that "[t]he consumer reporting agency that provided the report can be contacted at: Screening Reports, Inc. (www.screeningreports.com)" and gave a complete address and toll-free telephone number for SRI.   *See,* Ex. J, p. 46, l. 3-9; *See also* Ex. V.

### *Plaintiff's Request to SRI For His Report*

47.  At approximately 5:19 pm on August 20, 2010, Plaintiff faxed SRI a request for "a copy of my report", and at 5:31 pm SRI responded by faxing Plaintiff a copy of his report.  *See* E, p. 51, l. 14 to p. 52, l. 11; *See also* Plaintiff

deposition Exhibit # 2  (TAYLOR - 00002 (Plaintiff's fax) and TAYLOR - 00003 (SRI's Report), attached as Ex. X.  *See also* Ex. A, p. 137, l. 9 to p. 138, l. 16; p.156, l. 25 to p. 158, l. 25; *See also* Ex. W.   Plaintiff believes that before requesting his report from SRI he called SRI at SRI's number listed on Silverleaf's adverse action notice.  *See*, Ex. J, p.123, l. 16 to p.124, l. 1; p. 131, l. 16 to p. 132, l. 6; p. 159, l. 13-21.  Plaintiff cannot recall what was said during the call, whether he gave SRI any information during the call, or if SRI asked him for any information during the call, *See*, Ex. J, p.83, l. 5-13; p. 85, l. 11-14.

48.   Plaintiff did not dispute the contents of his report with SRI. *See, Complaint*, Doc # 1; *See* Ex. A, p. 246, l. 23 to p. 247, l. 8; p. 193, l. 20-23; *See also* Ex. J, p. 132, l. 17-18; *See* attached Exhibit AA, Plaintiff's Response to SRI's Interrogatories.

49.   After Plaintiff received an adverse action notice from the Colonial Grand at Mount Vernon apartments in May of 2012, rather than disputing the contents of consumer report issued by CoreLogic SafeRent, Inc., Plaintiff referred the matter to his attorneys in this case.  *See*, Ex. J, p. 42, l. 19 to p. 44, l. 12.

50.   After Plaintiff was denied an apartment at Windridge Apartments in June of 2012 due to the contents of a consumer report issued by Equifax, Plaintiff referred the matter to his attorneys in this case.   *See*, Ex. J, p. 26, l.4  to p. 28, l. 4; p. 44, l. 19 to p. 45, l. 21.

### *SRI's Practices Regarding Consumers Report and File Requests*

51.  SRI's practice is to work with applicants to make sure their reports are as accurate as possible.  *See* Ex. D, p. 58, l. 13-15.  SRI will send applicants copies of their reports or files for free even when requested more than 60 days after the applicant received an adverse action notice. *See* Ex. D, p. 58, l. 6-15;  *See also* Ex. A, p. 145, l. 12-19.  If SRI has already sent a applicant a copy of their report and the 60 day period has passed, SRI generally will not re-send the applicant their report if requested it again. *See* Ex. D, p. 58, l. 19-24;  *See also* Ex. A, p.145, l. 12 to p. 146, l. 21.   If SRI talks to such an applicant SRI will send them another copy if the  has lost the report.  *See* Ex. D, p. 59, l. 13-22.

52.  It is SRI's policy to send applicants who request free copies of their files regardless of whether more than 60 days has passed after SRI has prepared a report for an apartment complex, even if the applicant has previously received a copy of their report. *See* Ex. D, p. 59, l. 23 to p. 60, l. 4.  In most of these situations the applicant has disputed the accuracy of their report in which case SRI will engage in a discussion with the applicant in an effort to resolve the dispute.  *See,* Ex. A, p. 107, l. 8-13; p. 127, l. 6-13.  *See also*, Ex. D, p. 59, l. 23 to P. 60, l. 4. In these situations SRI will provide the applicant with a copy of their file and any documentation that SRI can and ask the applicant what they are disputing in those documents so SRI can get the applicant a copy of the court cases to match it up to

what SRI picked up from the court records themselves. *See,* Ex. A, p. 105, l. 24 to p. 105, l. 15.  SRI goes through this process because it is SRI's whole goal to make sure its reports are as accurate as possible and if there are inaccuracies SRI wants to work with the applicant through the dispute process to make sure to correct anything in error.  *See* Ex. D, p. 60, l. 4-17.  SRI conducts this process relatively quickly because it is not in SRI's best interests for an applicant to be upset for too long since they will generally take it out on SRI's client.  *See* Ex. A, p. 126, l. 12-17.  It is in SRI's business interest to avoid errors in its reports because they are disruptive to SRI's clients and could cause SRI to lose clients.  *See* Ex. A, p. 178, l. 15 to p. 179, l. 8.

53.   Whenever SRI sends applicants copies of their reports or files they include the document entitled "Summary of Your Rights Under the Fair Credit Reporting Act".  *See*, Ex. D, p. 75, l. 15 to p. 79, l. 2; *See also* page MT0005 of Ex. 10 of Huhta deposition (Ex. D), a copy of which is attached as Exhibit Y.  *See also*, Ex. A, p. 223, l. 15 to p. 224, l. 7 and MT0220 referenced therein, attached as Ex. Z.

### ***Plaintiff's January 4, 2011 Fax***

54.   On January 4, 2011, SRI received a fax purporting to be from Plaintiff requesting a complete copy of his file.  *See* Ex. A, p. 138, l. 17 to p. 139, l. 5; p. 139, l. 22-24; *See also* the January 4, 2011 fax (MT0004) referred to in Fortner

deposition (Ex. A) attached as Exhibit BB.    The fax does not contain any statement that SRI's report is inaccurate. *See*  Ex. BB.  The fax does not contain an offer to purchase Plaintiff's file, **nor** does not the Complaint allege Plaintiff made any such offer. *See,* Ex. BB; *See also* Complaint, Doc # 1. Plaintiff, who had never disputed his report with SRI and has no recollection of this fax.  *See,* Complaint, Doc # 1; *See* Ex. A, p. 246, l. 23 to p. 247, l. 8; p. 193, l. 20-23; *See also* Ex. J, p. 53, l. 23 to p. 54, l. 6; p. 132, l. 17-18; *See also* Plaintiff's Response to SRI's Interrogatories attached as Ex. AA.  SRI did not respond because it had already sent Plaintiff a copy of his report and considered his request to have already been addressed and the matter resolved, and because Plaintiff had missed the 60 day period during which he could obtain a free copy of his report.  *See* Ex. A, p. 138, l. 23 to p. 144, l. 16.

### *Steps SRI Would Have Taken if Plaintiff Had Disputed His Report*

55.  If Plaintiff had disputed the accuracy of SRI's report SRI could have obtained information from him containing personal identifiers – such as a copy of his driver's license - to assist SRI with their reinvestigation.   *See* Ex. A, p. 200, l. 3-22.  Further, because sex offender registries typically contain photographs, SRI could have compared the photograph on his license to the photograph on the registry.  *See* Ex. A, p. 201, l. 11 to p. 202, l. 4.  Similarly, SRI could have e-mailed a web snapshot of the registry photograph or a link to the photograph to

their contact at Silverleaf and asked that person to tell them if it was a photograph of the Michael Taylor who had applied.  *See* Ex. A, p. 201, l. 11 to p. 202, l. 20. Either way this process would have resolved the conflict and been enough to allow SRI to remove the "possible" sex offender statement from Plaintiff's report.  *See* Ex. A, p. 201, l. 23 to p. 203, l. 2.

56.  If Plaintiff had sent SRI a copy of his driver's license SRI could have used his personal identifiers to reinvestigate directly with Ware County Courthouse representatives, who when supplied with the proper identifying information will often provide information beyond that which is available publicly to assist SRI in removing criminal records from its reports. *See* Ex. A, p. 203, l. 8-24.  Further, had Plaintiff sent SRI the form he received back from the Chamblee Police Department in response to his request for a criminal background check stamped "NO RECORDS" it would have allowed SRI to remove the criminal records from his report. *See* Ex. E, p. 102, l. 23 to p. 103, l. 14;  *See also* Ex. F, p. 97, l. 9 to p. 98, l. 7.

### *SRI Does Not Place the Criminal History on Plaintiff's Report on Every Apartment Applicant Named "Michael Taylor"*

57.  Plaintiff admitted there is no basis for the allegation in paragraph 28 of his Complaint that it is "Defendant's usual practice to place upon the consumer report of every apartment applicant named "Michael Taylor" the false criminal history that it placed upon Plaintiff's report". *See* Ex. J, p. 129, l. 7 to p. 131, l. 13.

This allegation is totally false because SRI investigates every applicant by conducting independent criminal background checks and does not reuse information from a previous report on a subsequent report for an applicant of the same name. *See* Ex. A, p. 205. L. 16 to p. 206, l. 25.

### SRI's Website Provides an Address and Toll Free Number Consumers Can Use to Request Reports or Dispute Inaccuracies in a Report.

58.  Since April of 2009 SRI has provided an address and toll-free number on its website for consumers to use to request their SRI report or to dispute any inaccuracies on their SRI Report. *See* Ex. A, p. 159, l. 1 to p. 160, l. 14; *See also* 3rd page of Ex. W.  Since that date SRI has included a form on its website which allows consumers to send SRI any questions, comments or complaints. *See* Ex. A, p. 160, l. 13-22. Plaintiff admits Silverleaf's adverse action notice contained the address for SRI's Web which Plaintiff visited, but that he didn't dispute his report while there. *See*, Ex. J, p. 132, l. 17-18.

### Plaintiff's Lack of Damages

59.  Plaintiff does not know the amount of the actual or compensatory damages he incurred as a result of the FCRA violations he alleged against SRI in his Complaint. *See* Ex. J, p. 75, l. 18 to p. 77, l. 21.  Specifically, Plaintiff does not know the amount of damages he incurred as a result of the credit-defamation he alleges that SRI caused him by putting the criminal records of others on his report.

*See* Ex. J, p. 76, l. 14 to p. 77, l. 8.  Plaintiff cannot put a dollar amount on any of the damages he claims to have incurred in this case.   *See* Ex. J, p. 99, l. 14-17.

WHEREFORE, Plaintiff respectfully requests that this Court enter summary judgment in Defendant's favor, and for any other such relief this Court deems appropriate**.**

Respectfully Submitted,

/s/ Joseph S. Messer
Joseph S. Messer
Messer & Stilp, Ltd.
166 W. Washington St., Suite 300
Chicago, IL 60602
312-334-3476
312-334-3434 (fax)
IL # 6298459

Font Certification

Pursuant to Local Rule 7.1D, the undersigned counsel certifies that this brief has been prepared using Times New Roman 14 point font.

RESPECTFULLY SUBMITTED this 24th day of December 2012.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

MICHAEL TAYLOR,             )
Individually and on behalf of    )
all others similarly situated,     )
                             )
Plaintiff,                )
                             )
v.                     ) CIVIL ACTION FILE NO.
                            ) 1:11-CV-3426-AT-GGB
SCREENING REPORTS, INC.,   )
                             )
      Defendant.         )
_____)

## CERTIFICATE OF SERVICE

I hereby certify that on December 24, 2012, I electronically filed Defendant's Statement of Material Facts in Support of Defendant's Motion for Summary Judgment using the CM/ECF system which will automatically send email notification of such filing to the following attorney(s) of record:

Respectfully submitted,

/s/Joseph S. Messer
Joseph S. Messer
IL Bar No.6200036
PRO HAC VICE